UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY F. IANNOTTI,

                    Petitioner,              Case No. 4:21-cv-12622
                                              Hon. Shalina D. Kumar

v.


GARY MINIARD,

                    Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS**

Petitioner, Anthony F. Iannotti ("Iannotti"), filed this petition for a writ

of habeas corpus under 28 U.S.C. § 2254. Iannotti is serving a life

sentence and lesser prison terms for his Macomb County Circuit Court jury

trial convictions of first-degree murder, first-degree home invasion,

breaking and entering a building with intent to commit a felony, possession

of burglary tools, assault by strangulation, tampering with an electronic

monitoring device, unlawfully driving away an automobile, and larceny from

a building. Iannotti raises ten claims challenging his convictions. Because

none of the claims merit habeas relief, the petition will be denied. The Court

will also deny Iannotti a certificate of appealability and deny permission to appeal in forma pauperis.

## I.     Factual and Procedural Background

Iannotti was charged in four cases for a series of offenses occurring in Macomb County in July and August of 2016. In the first case, Iannotti was charged with strangling his wife, Cassandra Iannotti ("Cassandra"). Roughly a week after he was released on bond in that case, he was charged with breaking into Cassandra's house and removing money and other items. In the third and most serious case, Iannotti was charged with the murder of Dona Lawrence. Finally, in his fourth case, Iannotti was charged with breaking into a rural home while on the run from police. All four cases were tried together.

At Iannotti's trial, Cassandra testified that in the early morning hours of July 1, 2016, she returned home from her late-night shift at Meijer. Iannotti confronted her in the kitchen about where she had been, an argument ensued, and Iannotti strangled her until she passed out. Cassandra called 9-1-1 when she regained consciousness. Iannotti admitted to the offense in a recorded phone call he made from jail to Cassandra's mother. Trial Tr. II, ECF No. 12-15, at 138-160.

Iannotti spent a few weeks in jail on the strangulation charge before his father posted bond for him on August 9, 1016. One of his bond conditions required him to wear a tether and stay away from the home he shared with Cassandra. Nevertheless, Iannotti admitted at trial that he broke into the home on the morning of August 10, 2016, took cash, his wallet, and a photo book. He later cut off his tether. Trial Tr. VI, ECF No. 12-19, at 34-42.

Dona Lawrence ("Lawrence"), a sixty-one-year-old woman, was stabbed to death in her apartment later that same morning. The prosecutor theorized that Iannotti believed Lawrence was responsible for the death of his cousin, Jennifer Shoemaker, who died in April of 2016 after she allegedly received the wrong medication from Lawrence. According to the prosecution, Iannotti had also made statements prior to the murder that he was on the run from police and needed money and a car, both of which were stolen from Lawrence's apartment. Trial Tr. II, ECF No. 12-15, at 126-27.

Donald Rassegga ("Rassegga"), a close friend of Lawrence, testified at trial that he drove to Lawrence's apartment building around 7:00 a.m. on August 10, 2016 to check on her, as he often did. Rassegga found Lawrence in bed sleeping, so he left and then returned in his car later that

morning. As he pulled back into the apartment complex, Rassegga saw a man driving Lawrence's car out. He went back into the apartment and saw Lawrence lying unresponsive on the floor. He then went to a neighbor's apartment and called 9-1-1. Trial Tr. III, ECF No. 12-16, 106-30.

Lawrence's neighbor, Mila Leggett ("Leggett"), testified that she was sitting on her porch with her husband the morning of the murder when she saw a man coming toward their building from the parking lot. The man went into the apartment building, then he came out again, knocked on a patio door, and called out Lawrence's name. The man then went back inside the building. Trial Tr. IV; ECF No. 12-17, at 24-29. Leggett's husband gave substantially the same account. He also identified Iannotti as the man they saw knock on Lawrence's window and heard the man identify himself as "Anthony" when knocking. Later that morning, Rassegga came to their apartment and called 9-1-1. *Id*. 58-67.

Heather Hanson, a house cleaner, testified that the morning of Lawrence's murder she was working at the apartment building and saw Iannotti leave the building. Trial Tr. IV; ECF No. 12-17, at 78-94.

Detective Mark Ptaszek of the Warren Police Department was dispatched to the scene. The deceased victim was laying on her kitchen floor in a pool of blood. Subsequent examination of her body revealed that

she had been stabbed over one hundred times in the head, fracturing her skull. Police eventually recovered Lawrence's car, and Iannotti's DNA was recovered from the gear shift. Further investigation revealed security camera footage of Iannotti driving the car. Trial Tr. III, ECF No. 12-16, at 143-215.

On August 12, 2016, while Cassandra was staying at her parents' house, her father, Ronald Hokanson ("Hokanson"), caught Iannotti loitering near his property. Hokanson fired a warning shot with his pistol, and Iannotti ran off. Trial Tr. IV, ECF No. 12-17, at 223-33.

On August 16, 2016, Julie Hyland was at her rural Shelby Township home when she saw a man in her enclosed porch and called 9-1-1. Police arrived and discovered evidence in Hyland's barn suggesting that someone had been living there. Security camera footage later revealed that Iannotti was staying at the property. Police officers spotted Iannotti at a nearby apartment complex and arrested him. Trial Tr. V, ECF 12-18, at 80-89, 102, 124-37.

While in custody, Iannotti wrote a nineteen-page document that explained his actions. He testified at trial in his own defense consistent with the document. In short, Iannotti admitted that he was at Lawrence's apartment on the morning of her murder. When he arrived, Alec Iannotti—

Shoemaker's son—was there with Samantha Somers, Alec's girlfriend. Iannotti explained that Alec attacked and stabbed Lawrence while Somers held a gun on Iannotti. Alec told Iannotti that he was seeking revenge against Lawrence for killing his mother. The couple then made Iannotti touch Lawrence's body, and the handle of the screwdriver Alec used to stab her. The couple threatened to kill Iannotti's wife if he went to police. They then directed him to steal Lawrence's car. From that point until his arrest, Iannotti hid in various locations and stole what he needed to survive. He said he planned to eventually seek revenge against Alec and Somers and warn Cassandra, but he was caught and arrested before he had an opportunity to do so. Trial Tr. VI, ECF No. 12-19, at 45-78, 119-20. The jury found Iannotti guilty in all four cases.

Following his conviction and sentence, Iannotti filed a claim of appeal in the Michigan Court of Appeals. The Michigan Court of Appeals affirmed Iannotti's conviction in an unpublished opinion. *People v. Iannotti*, 2020 WL 257401 (Mich. Ct. App. Jan. 16, 2020). He then filed an application for leave to appeal in the Michigan Supreme Court which was denied. *People v. Iannotti*, 946 N.W.2d 274 (Mich. 2020) (Table).

Iannotti now moves for habeas relief in this Court and raises ten claims for relief:

- 6 -

I. Petitioner was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments, where trial counsel failed to sever two cases involving violence against his wife and her property from an unrelated case of murder and home invasion.

II. Petitioner did not receive effective assistance of counsel as required by the Sixth and Fourteenth Amendments when counsel did not plead out the domestic violence cases that defendant admitted during his testimony, which would have kept the evidence of the strangulation and other bad acts out of the trial.

III. The trial court erred when it failed to suppress a document written by the petitioner for his attorney and protected by attorney-client privilege.

IV. The trial court erred when it did not grant defendant a directed verdict on the charge of home invasion first degree when there was no evidence that the structure he entered was a part of the residence.

V. Defendant was denied his Sixth and Fourteenth Amendment right to effective assistance of counsel when trial counsel failed to contest cell site information.

VI. Petitioner was denied his Sixth and Fourteenth Amendment right to the effective assistance of counsel where trial counsel failed to object to the prosecutor's use of petitioner's pre and post arrest silence – an abuse of the Fifth Amendment.

VII. Petitioner was denied his Sixth and Fourteenth Amendment right to effective assistance of counsel where trial counsel failed to object to the use of excessively gruesome crime scene photographs and videos.

VIII. The trial court committed reversible error when it allowed videos of the defendant into evidence that had no bearing on the charges and had no probative value.

IX. Defendant was denied his Sixth and Fourteenth Amendment right to effective assistance of counsel where trial counsel failed to call necessary witnesses to present a substantive defense.

X.  Defendant's right to effective assistance of counsel was violated by the cumulative errors of trial counsel.

## II.    Standard of Review

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who raise claims adjudicated by state courts must "show that the relevant state-court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018)(quoting 28 U.S.C. § 2254(d)).

The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court

decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

Ultimately, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Additionally, a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.   Analysis

### A. Ineffective Assistance of Counsel

The Court will first address Iannotti's claims of ineffective assistance of counsel. A petitioner claiming a violation of his Sixth Amendment right to the effective assistance of counsel must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment." *Id*. at 687. "Judicial

scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

The Supreme Court has "declined to articulate specific guidelines for

appropriate attorney conduct and instead [has] emphasized that the proper

measure of attorney performance remains simply reasonableness under

prevailing professional norms." *Wiggins*, 539 U.S. at 521 (quoting

*Strickland*, 466 U.S. at 688) (quotation marks omitted). And where the

challenged conduct amounts to legitimate trial strategy, habeas courts will

not find that counsel performed deficiently. *Robins v. Fortner*, 698 F.3d

317, 337-38 (6th Cir. 2012).

      1. Claim I

     Iannotti first asserts that his attorney should have moved to sever the

charges. This allegation was raised on direct appeal, and after reciting the

standard for joinder of charges under Michigan Court Rule 6.120, the

Michigan Court of Appeals found that joinder was appropriate under state

law:

> In the present case, there was no motion to sever the charges. Thus, the trial court did not conduct an analysis of the propriety of the joinder of all charges in one jury trial. Nonetheless, we conclude that the trial court did not err in joining the charges in one trial. Although the charges consisted of assault, home invasion, and murder, and were

committed two months apart, they were seemingly connected. Defendant committed an act of domestic violence upon wife Cassandra when he assaulted her in their home. He was arrested and jailed until he was able to post bond. After he posted bond, he returned to the marital home despite the order of no-contact in the criminal case and Cassandra's PPO against defendant. There, he broke into the home and took items, including cash. Then, defendant apparently went to the home of the victim, and in an apparent rage, he murdered the victim by stabbing her over 100 times. There was evidence that defendant showered, went through the victim's purse, and stole her car. From there, defendant went and purchased a cell phone and eventually hid out at the Hyland barn and property. Although the Hyland property gave defendant shelter, he entered the home searching for food and, one could infer, other items of value or cash to continue his evasion of authorities.

The fact that defendant's crimes took place across two months  does not alter the conclusion that joinder was appropriate. In [*People v. Williams*, 483 Mich. 226 (2009)], the police raided a hotel room on November 4, 2004. Upon entry, they found the defendant coming out of the bathroom as it flushed, but were able to retrieve a bag of cocaine stuck in the drain and rocks of cocaine when the toilet bowl was broken. In February 2005, the police executed a raid at a home where the defendant was found seated on a couch with a bag of cocaine near him and a package of baggies and scissors in his lap. The *Williams* Court held that the joinder of the charges, despite the discrete moments in time, was appropriate because the evidence supported that the defendant engaged in ongoing acts as part of his scheme or plan to package cocaine for distribution. *Id*. at 234-235.

In light of the *Williams* decision, the trial court did not err in failing to sever the charges. Defendant strangled his wife and was jailed. Although he was jailed for a time, upon his release, he broke into the marital home and took cash and other items. He then went to the victim's home, and the circumstantial evidence and identifications indicate that he murdered the victim.

- 11 -

He then tried to evade the police for six days before entering the Hyland home and was arrested after the homeowner saw him and phoned police. Thus, defendant's conduct, although separated in time by his jailing, consisted of connected acts, a crime spree. He apparently was prone to fits of rage and anger that caused him to assault women, and to avoid the repercussions and punishment, he stole cash and items to avoid authorities.

*Iannotti*, 2020 WL 257401, at * 4-5 (footnote omitted).

There are no Supreme Court cases holding that a defendant in a criminal case has a constitutional right to a separate trial on each of the charges against him. *See Rodriguez v. Jones*, 625 F. Supp. 2d 552, 560-61 (E.D. Mich. 2009). Iannotti's claim, therefore, hinges on his assertion that he was entitled to separate trials under state law. The Michigan Court of Appeals, however, determined that a joint trial was warranted under Michigan Court Rule 6.120. That is a determination of state law that a federal court cannot second guess on habeas review. *See, e.g., Wagner v. Birkett*, 2014 U.S. Dist. LEXIS 123494, *40 (W.D. Mich. March 31, 2014). Given that a motion to sever would have been denied under Michigan law, Iannotti cannot demonstrate that his counsel was ineffective for failing to make a motion to sever charges. *See Altman v. Winn*, 644 F. App'x 637, 644 (6th Cir. 2016); *Kittka v. Franks*, 539 F. App'x 668, 674 (6th Cir. 2013). Therefore, this claim does not merit habeas relief.

2.  Claim II

Iannotti presents a related and alternative argument in his second

claim. He asserts that his counsel should have at least advised him to

plead guilty to the strangulation and home-invasion charges for which he

admitted responsibility at trial. The Court of Appeals rejected this claim on

the merits as well:

> [A] review of the record reveals that defense counsel
> purposefully tried the cases together as a matter of trial strategy.
> Specifically, in closing argument to the jury, defense counsel
> acknowledged that defendant admitted to several crimes
> because he was being honest. Counsel indicated that defendant
> took the stand to accept responsibility for his actions and explain
> his presence at the murder scene and his acquisition of the
> victim's car. However, defendant adamantly denied that he
> committed the murder. Therefore, counsel's trial strategy was to
> convince the jury that defendant was only guilty of the assaultive
> and home invasion offenses to which he accepted responsibility,
> but not guilty of the most serious offense of first-degree felony-
> murder, a crime for which the sentence was life imprisonment.

> "[D]ecisions regarding what evidence to present and which
> witnesses to call are presumed to be matters of trial strategy, and
> we will not second-guess strategic decisions with the benefit of
> hindsight." *Dunigan*, 299 Mich. App. at 589-590. "The fact that
> defense counsel's strategy may not have worked does not
> constitute ineffective assistance of counsel." *Stewart (On
> Remand)*, 219 Mich. App. at 42. Because defendant had
> admitted to the assault upon Cassandra, breaking into their
> home upon release from jail, removing his tether, and entering

- 13 -

the Hyland home in letters, phone conversations, and social media, it was logical trial strategy for counsel to try those cases with the murder and contend that defendant admitted when he was at fault, but was honest about his lack of or forced participation in the murder. In light of the record, defendant's claim of error is without merit.

*Iannotti*, 2020 WL 257401, *5.

This decision reasonably applied the *Strickland* performance-prong. For a state court's adjudication of a *Strickland* claim to be "unreasonable" under 28 U.S.C. §2254(d)(1), it "must have been 'so lacking in justification' that it amounts to 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Hendrix v. Palmer*, 893 F.3d 906, 922 (6th Cir. 2018) (quoting *Harrington*, 562 U.S. at 103). While Iannotti provided the state courts on direct appeal several reasons why his trial attorney's decision to use his concession of guilt on the lesser charges to buttress his credibility with respect to the murder charge was unwise, counsel's strategy "need not be particularly intelligent or even one most lawyers would adopt." *Cone v. Bell*, 243 F.3d 961, 978 (6th Cir. 2001), *rev'd on other grounds*, 535 U.S. 685 (2002). "Strategic choices by counsel, while not necessarily those a federal judge in hindsight might make, do not rise to the level of a Sixth Amendment violation." *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000). Because there can

be at least fairminded disagreement whether defense counsel made a

reasonable strategic decision to buttress Iannotti's credibility by having him

concede guilt to the lesser charges, Iannotti fails to demonstrate

entitlement to relief based on this claim.

      3.   Claim V

      Iannotti asserts in his fifth habeas claim that his counsel was

ineffective for failing to object to the prosecutor withholding cellphone

records prior to trial. The claim was raised on a single page of his

supplemental pro se brief filed in the Michigan Court of Appeals. (ECF No.

12-23, PageID.2616.) The state court summarily rejected the claim

because "defendant failed to present record factual support to review his

claim[]." *Iannotti*, 2020 WL 257401, *11 n.10.

      As in the state court, Iannotti fails to elaborate on the basis for his

claim here. The record shows, however, that in both his jail-house letter

and trial testimony, Iannotti claimed that he was only at the victim's

apartment because he had called Samantha Somers that morning looking

for a ride, and she told him to meet her there. (Trial Tr. VI, ECF No. 12-19,

at 129-134; Iannotti's Letter, ECF No. 12-23, PageID.2420.) On rebuttal,

the prosecutor presented testimony from an expert witness indicating that

no such call was made from Iannotti's cellphone to Somers' cellphone,

leaving Iannotti with no credible explanation for why he was at the victim's apartment. Trial Tr. VII, ECF No. 12-20, at 18-37.

As reasonably found by the Court of Appeals, Iannotti did not present the state courts with any factual support for his claim that he was not provided with the cellphone records in advance of trial. Indeed, the record suggests that defense counsel knew about the records and stipulated to their admission. Trial Tr. VII, ECF No. 12-19, at 115-116. "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Dunn v. Reeves*, 141 S. Ct. 2405, 2407 (July 2, 2021) (quoting *Burt v. Titlow*, 571 U. S. 12, 23 (2013)).

As Iannotti presented neither the state court nor this Court with any record evidence that the records were withheld prior to trial, this claim is without merit.

4.  Claim VI

Iannotti asserts in his sixth claim that his counsel failed to object to the prosecutor's use of his prearrest silence at trial. This claim was also raised on direct appeal in his pro se supplemental brief. The Court of Appeals summarily denied the claim, finding "a review of the record reveals that the prosecutor did not comment on his silence, but challenged his

- 16 -

assertion that he acted under duress after he left the scene of the murder." *Iannotti*, 2020 WL 257401, *11 n.10.

This determination was reasonable. A prosecutor may use a defendant's pre-arrest silence to impeach the defendant's credibility. *Jenkins v. Anderson*, 447 U.S. 231, 239 (1980). Additionally, the prosecution may use a defendant's pre-arrest silence as substantive evidence of guilt as long as the defendant "did not expressly invoke the privilege against self-incrimination." *Salinas v. Texas*, 570 U.S. 178, 181 (2013).

Iannotti claimed at trial that following the murder he was fearful that Alec Iannotti and Somers would harm his wife and children. Trial Tr. VI, ECF 12-19, at 62-63. The prosecutor attempted to impeach this testimony by challenging Iannotti with the fact that he did not go to police, warn his wife, or tell someone else to warn her. (*Id.*, at 95-101, 121-122, 126-127, 153, 245-246.)

The claim is without merit because Iannotti fails to show that his counsel missed a meritorious objection. Iannotti's defense was that he was set up to take the blame for the murder, and that part of the set up included the threats. It was proper for the prosecutor to attack the credibility of that testimony by asking Iannotti to explain why he failed to warn his wife about

the threats. This was not a prohibited comment on Iannotti's pre-arrest silence. Counsel was not ineffective for failing to make meritless objections. *Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008).

### 5.  Claim IX

Iannotti's ninth claim asserts that his counsel failed to interview and call defense witnesses at trial. He claims someone named "Tim," his therapist, and Alec Iannotti, all would have testified favorably to the defense. The Court of Appeals rejected the claim on the merits:

> Although defendant asserts that trial counsel was ineffective for failing to call witnesses, he failed to meet his factual predicate of supporting this claim of error. Specifically, defendant proffered that he spent time with "Tim" before the time of the murder, and therefore, it was impossible for him to commit it. Further, he argued that his unnamed physical therapist would verify that he walked with a significant limp, a condition that was not attested to by the victim's neighbors. Finally, defendant alleged that defense counsel improperly failed to call Alec Iannotti to testify because he would have confirmed that he was left-handed, suffered from addiction problems, and may have given conflicting testimony regarding his involvement in the case.
>
> However, defendant failed to present affidavits from those individuals to demonstrate that they would have testified consistent with defendant's representation and provided a defense. In the absence of affidavits or other documentary evidence, there is no indication that those witnesses would have provided pertinent or exculpatory evidence. However, without Alec's testimony, defendant was able to testify that any involvement in the victim's murder was under duress and police simply failed to apprehend the true killer; a theory that the jury did not accept. Again, defendant failed to support the factual

predicate for his claimed denial of a substantial defense. *Hoag*, 460 Mich. at 6. Accordingly, the trial court correctly concluded that defense counsel was not ineffective for failing to call these witnesses.

*Iannotti*, 2020 WL 257401, at *6, 9 n.10.

Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case or make a reasonable determination that such investigation is unnecessary. *Strickland*, 466 U.S. at 691; *Stewart v. Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning . . . guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). That said, decisions as to what evidence to present and whether to call certain witnesses are presumed to be matters of trial strategy. When making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23. The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).

The state court reasonably rejected the claim and noted that Iannotti failed to factually support his claim. He made no offer of proof that the witnesses were willing to testify in his favor, nor any factual foundation for what they would say at trial. There is simply nothing in the record supporting the claim that the failure of these witnesses to be interviewed and called deprived Iannotti of a substantial defense. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007); *Turner v. Romanowski*, 409 F. App'x 922, 929 (6th Cir. 2011) ("Turner has not produced an affidavit from Ms. Matthews herself indicating that she would be willing to testify on Turner's behalf.").

For the reasons stated above, none of Iannotti's ineffective assistance of counsel claims merit habeas relief.

B. Claim III

Iannotti's third habeas claim asserts that the trial court erred in allowing admission of his jail-house letter. He asserts that the letter was prepared for his counsel, and therefore it was protected by attorney-client privilege. The Court of Appeals rejected the claim, finding that the letter was legally seized from his cell and that it was not prepared for Iannotti's attorney. *Iannotti*, 2020 WL 257401, at *6-7.

Setting aside the factual finding by the state court that the letter was not subject to the attorney-client privilege, a violation of that rule would not provide a basis for granting habeas relief. The attorney-client privilege is a creation of the common law, not the federal constitution. *Sanborn v. Parker*, 629 F.3d 554, 575 (6th Cir. 2010) (quoting *Lange v. Young*, 869 F.2d 1008, 1012, n. 2 (7th Cir. 1989)). Because federal habeas review is limited to violations of the United States Constitution or federal laws and treatises, any violation of a habeas petitioner's attorney-client privilege would not warrant habeas relief. *Id*. The alleged violation of Iannotti's attorney-client privilege is therefore not cognizable in federal habeas review.

C. Claim IV

Iannotti's fourth habeas claim asserts that insufficient evidence was presented at trial to sustain his home invasion conviction. He asserts that no evidence was presented to show that he intended to commit a felony in the home, and he asserts that the enclosed porch he entered does not qualify as a dwelling.

After reciting the applicable standard of review and elements of the offense, the Michigan Court of Appeals rejected this claim on the merits:

> We conclude that the trial court correctly denied the motion for directed verdict of the first-degree home invasion charge. A review of defendant's 20-page letter reveals that he was trying to

evade the police, did not have food, and did not have resources to travel or purchase food. Therefore, in the letter, he described bathing in the river as well as entering buildings and cars to find shelter and to steal items. He described eating old honey at the Hyland barn that made him sick in addition to eating unripe vegetables from a garden he came upon. He described looking for unoccupied homes and taking items that he found there. For example, he claimed that he found an unoccupied home in Sterling Heights and slept on a futon. There, he found a t-shirt and ball cap that he stole as well as some knives. Defendant also acknowledged carrying his tools with him. He tried to steal a Jaguar near a masonry company, but it would not start.

Finally, with regard to the Hyland home, he indicated that he was starving and did not believe that anyone was home because the car at the house was gone, and no one answered the door. However, when he saw the wife near the window, he ran away. Thus, in the history delineated in the letter, although defendant did not expressly state his intention when he entered the Hyland home, there was sufficient evidence that defendant would search for resources such as food and money to continue to escape police apprehension. In light of defendant's own words, prior theft of the victim's car, and his desire to prevent apprehension by cutting off his tether and breaking into homes and businesses to sleep and steal, the trial court did not improperly deny the motion for directed verdict. The contested element of intent was established by defendant's actions and circumstances.[9]

_____

[9] In his standard four brief, defendant also asserted that the porch did not constitute a dwelling for purposes of home invasion statute. However, defendant's position was rejected in *People v. Canales*, 243 Mich. App. 571, 576 (2000).

*Iannotti*, 2020 WL 257401, at *8.

The relevant standard for sufficiency-of-the-evidence claims is

"whether, after viewing the evidence in the light most favorable to the

- 22 -

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A court may grant habeas relief only if the state court's application of this standard was unreasonable. *See* 28 U.S.C. § 2254(d)(2). The court may not "reweigh the evidence or redetermine the credibility of the witnesses" because such an assessment "is generally beyond the scope of federal habeas review of sufficiency of evidence claims." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). "The *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n.16). Furthermore, "[a] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 132 (2010), (quoting *Jackson*, 443 U.S. at 326).

Sufficient evidence was presented to sustain Iannotti's conviction. First, with respect to the argument regarding the porch, the Court of Appeals found that a porch qualified as a dwelling for purposes of the

- 23 -

home-invasion statute. That determination of state law is binding here. *Brown*, 441 F.3d at 351.

With respect to Iannotti's argument that there was no evidence offered to show his intent to commit a felony, the state court summarized the circumstantial evidence indicating that he intended to commit a larceny from the dwelling. Iannotti's letter detailed his actions while on the run from police – which included several acts of larceny. Iannotti testified that he was hungry and merely planned to ask for food, but the jury was free to disregard that assertion and, viewing the circumstantial evidence most favorably to the prosecutor, look to Iannotti's contemporaneous conduct to determine beyond a reasonable doubt that he intended to steal food or other necessities from the victim. Iannotti is not entitled to habeas relief with respect to this claim.

### D. Claim VII

Iannotti's seventh habeas claim asserts that the trial court erred in admitting gruesome photographs of the murder victim's body. He also asserts that his counsel was ineffective for failing to object to the photographs' admission.

The Michigan Court of Appeals rejected the claim:

- 24 -

Defendant's challenge to the admission of this evidence is without merit. There are photographs of the victim lying on the floor with blood around her head. Further, there is a video recording of the crime scene that similarly depicts the victim. Although the autopsy photographs depicted the puncture wounds to the victim's now shaved head, the blood was also cleaned from the area, and the photos were not practically graphic or gruesome. Under these circumstances, the trial court did not abuse its discretion by admitting the photos.

*Iannotti*, 2020 WL 257401, at *9.

The decision that the trial court did not err in admitting the photographs did not contravene clearly established federal law. The Supreme Court has not ruled that the admission of crime scene or autopsy photographs violates due process. Rather, the Supreme Court has stated that just because a relevant photograph "is shocking to the sensibilities of those in the courtroom" does not alone "render its reception a violation of due process." *Lisenba v. People of the State of California*, 314 U.S. 219, 228 (1941). The Sixth Circuit has likewise held that a challenge to the admission of a gruesome photograph does not present a question of constitutional magnitude. *See Cooey v. Coyle*, 289 F.3d 882, 893-894 (6th Cir. 2002); *see also Franklin v. Bradshaw*, 695 F.3d 439, 456-457 (6th Cir. 2012) (admission of eighteen autopsy photographs of victims did not render state criminal trial fundamentally unfair); *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2005).

- 25 -

In this case, the photographs of the victim were relevant and admissible under state law. They depicted the extent, severity, and nature of the victim's injuries and were thus highly relevant to show how the victim died, as well as the perpetrator's state of mind. Iannotti fails to establish that the admission of the photographs violated due process or otherwise rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

### E. Claim VIII

Iannotti asserts in his eighth habeas claim that the trial court erred in admitting photos and videos taken from his cellphone. He asserts, without elaboration or explanation, that the material was more prejudicial than probative.

Though Iannotti did not develop this claim, a review of the record shows that on cross-examination the prosecutor admitted photographs and video from Iannotti's cell phone depicting his sleeping wife. The photos were taken the day after he strangled her and without her consent. Trial Tr. VI, ECF No. 12-19, at 115-18. The prosecutor used the material to impeach Iannotti's testimony that he did not put his wife in disgusting or demeaning positions and that she was the controlling and manipulative one in their relationship. *Id.*

An argument that a state court misapplied or unreasonably applied the probative versus prejudicial balancing test of Michigan Rule of Evidence 403 is not cognizable on federal habeas review because it asks the Court to evaluate the state court's application of a state evidentiary rule. *See Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000). It is well-settled that "alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review" unless "the state's evidentiary ruling is so fundamentally unfair that it rises to the level of a due-process violation." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012) (punctuation modified). Iannotti fails to show that it was fundamentally unfair to admit the photos and videos. This claim is without merit.

F. Claim X

Iannotti's final claim, his tenth, asserts that the accumulation of errors by his counsel entitles him to habeas relief. Such a cumulative error claim is not cognizable on federal habeas review. *See Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011) (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)); *see also Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012) (ruling that trial counsel cumulative error claim was not cognizable). Petitioner fails to state a claim upon which relief may be granted as to this issue.

- 27 -

## IV.    Conclusion

Because the claims raised in the petition are without merit, Iannotti's petition for writ of habeas corpus is denied.

In order to appeal the Court's decision, Iannotti must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

Having considered the matter, the Court concludes that Iannotti has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case.

The Court will also deny permission to appeal in forma pauperis because any appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

Accordingly, the Court 1) **DENIES** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**IT IS SO ORDERED**.

s/Shalina D. Kumar
Shalina D. Kumar
United States District Judge

Dated: March 14, 2025